UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **John Doe**, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**New York University**,<br><br>    Defendant. | Case No. 1:23-mc-00398 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM

Plaintiff John Doe, a first-year law student at New York University, should be permitted to proceed under pseudonym. This lawsuit pertains to his personal beliefs and characteristics, and he risks significant retaliation from the NYU Law Review, his peers, his professors, NYU administrators, and potential employers if his identity is exposed. NYU faces no prejudice from Doe's proceeding under a pseudonym, particularly at this early stage of litigation involving legal claims that do not focus on Doe's own facts or credibility. Likewise, the public has little interest in knowing which specific student challenged the NYU Law Review's generally applicable practices. Because the plaintiff's interest in remaining anonymous significantly outweighs any competing interests, the Court should grant the motion and permit Doe to proceed under pseudonym.

### LEGAL STANDARD

Although Rule 10(a) says that "[t]he title of [a] complaint must name all the parties," courts have "carved out a limited number of exceptions to the general requirement of disclosure of the names of parties, which permit plaintiffs to proceed anonymously." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir.

2008). "[W]hen determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id*. The Second Circuit has provided a list of "non-exhaustive" factors for courts to "take into account":

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 189–90 (internal alterations and citations omitted).

## ARGUMENT

The relevant factors support allowing plaintiff Doe to proceed under pseudonym.

1. First, this litigation involves matters that are highly sensitive and of a personal nature. They pertain to Doe's personal characteristics—his race, sex, gender identity, and sexual orientation. *See Doe #1 v. Syracuse University*, No. 18-cv-0496, 2018 WL 7079489, at *4 (N.D.N.Y. Sept. 10, 2018), *adopted*, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) ("[C]laims involving sexual orientation . . . are examples of matters that qualify as being highly sensitive and of a personal nature.").

The claims also implicate Doe's personal beliefs in a matter of great controversy, particularly his belief that academic honors such as law-review members be awarded based on merit without any regard to an applicant's race, sex, gender identity, or sexual orientation. *Cf. Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) ("This suit . . . forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment."); *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981) (permitting plaintiffs to proceed pseudonymously because the lawsuit revealed their unpopular personal beliefs); *Choice, Inc. of Tex. v. Graham*, 226 F.R.D. 545, 548 (E.D. La. 2005) (granting plaintiffs' motion to proceed pseudonymously after finding that they "made revelations about their personal beliefs").

Most people at NYU and at NYU Law School do not share Doe's beliefs. *See* Doe Decl. ¶¶ 5–7 (attached as Exhibit 3). And there is no question how the University—including its professors and administrators—will respond to the plaintiff's lawsuit. The law school and the university have fully embraced the tenets of "anti-racism" that call for discrimination against white men such as Doe to achieve the university's goals of racial balancing and equity. In May, shortly before the Supreme Court's decision in *Students for Fair Admission v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), NYU's President issued a university-wide communiqué bemoaning the "shadow hanging over higher education" from that case. He pledged that whatever "this ruling may change, it will not alter NYU's" "core values" of "diversity and inclusion."[1] On the day that the Court's decision dropped, the President sent another letter lamenting the "difficult day" that "[w]e" "see" "as a step backwards."[2] He declared that: "At NYU, diversity is a core part of our identity," and defiantly announced

---

1. Andrew Hamilton, *An End-of-Year Message to the NYU Community* (May 19, 2023), https://perma.cc/DS5V-W5HA.
2. Andrew Hamilton et al., *Letter to the NYU Community From University Leadership About Today's Supreme Court Ruling* (June 29, 2023), https://perma.cc/5K3A-ELVN.

that "we will not forsake [that] commitment."[3] The university even quoted a dissenting opinion complaining about "a superficial rule of color-evasiveness."[4] A university website about the decision promotes statements from professors that are *all* opposed to colorblindness in higher education.[5] And the theme of the materials on NYU's official "Anti-Racism Education Resource List"[6] is that white students like the plaintiff are inherently oppressors who should be discriminated against in the name of equity. One of those resources boasts that most people "involved in antiracist endeavors generally assume that all whites have a racist perspective unless demonstrated otherwise."[7] Filing a lawsuit to ensure equal educational opportunities regardless of race would solidify these people's assumptions about Doe.

In short, the beliefs that Doe seeks to advance in this lawsuit "constitute a 'modern day Scarlet Letter.'" *Doe #1*, 2018 WL 7079489, at *4. They "involve timely 'hot-button' issues that are frequently discussed and debated in many different settings across the country" and "implicate the highly sensitive and personal matters of racism[ and] sexism." *Id*. Courts in similar cases have granted anonymity to individual Plaintiffs, reasoning that "it is abundantly evident that the[se] issues" "are a matter of highly charged political debate" and "[t]he extreme emotions on both sides of this debate make likely the risk of ridicule and mental or physical harm." *See Menders v. Loudon County School Board*, No. 1:21-cv-669, Doc. 22, at *3 (E.D.V.A. July 28,

---

3. *Id*.
4. *Statement on the Supreme Court's Ruling in the Cases Involving Admissions Practices at Harvard and UNC*, Office of Global Inclusion, Diversity, and Strategic Innovation (June 29, 2023), https://perma.cc/L8HX-RMCW (cleaned up).
5. *The Uncertain Fate of Affirmative Action in College Admissions*, NYU News (June 16, 2023), https://perma.cc/CV8R-JKEN.
6. *Anti-Black Racism Education Resource List*, https://perma.cc/WE44-6HLS (last visited Oct. 20, 2023).
7. Robin DiAngelo, *Nothing to Add: A Challenge to White Silence in Racial Discussions*, 2(1) Understanding & Dismantling Privilege J. 1, 11 (Feb. 2012), https://perma.cc/27AS-LDQP.

2021) (attached as Exhibit 2) (involving similar anti-racism concepts); *see also Does 1– 2 v. Hochul*, No. 21-cv-5067, 2022 WL 836990, at *5 (E.D.N.Y. Mar. 18, 20 22) (relying on "the unique sensitivities that exist within the current political climate and social context" in granting anonymity); *Does 1 through 11 v. Board of Regents of University of Colorado*, No. 21-cv-02637, 2022 WL 43897, at *3 (D. Colo. Jan. 5, 2022) (because "neither the court nor the litigants undertake litigation in a vacuum," "the political climate and public attitudes concerning [the underlying issue] exist and must be considered by the court"); *Publius v. Boyer-Vine*, 321 F.R.D. 358, 363 (E.D. Cal. 2017) (granting anonymity and reasoning that "[a]s a matter of common sense and knowledge, political opinions, like religious beliefs, especially if they are controversial and in the minority, can certainly be a source of social ostracization").

2. This litigation also poses a risk of retaliation, which is exacerbated by the plaintiff's status as a student and the defendant's control over his education. The university environment is characterized by an "inherent power asymmetry between" the school and its students. *Arizona Students' Ass'n v. Arizona Board of Regents*, 824 F.3d 858, 869 (9th Cir. 2016). Courts properly recognize the realities of this environment by granting anonymity in university-student cases in circumstances that, in other environments, may not warrant it. *See Doe v. Colgate University*, No. 15-cv-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (collecting cases); *see also Doe v. New York University*, 537 F. Supp. 3d 483, 497 (S.D.N.Y. 2021) (granting anonymity because "revealing [the plaintiff's identity in a lawsuit pertaining to her violations of COVID-19 protocols could impede her progress" toward "her stated career goals").

Most obviously, Doe faces a risk of retaliation from the NYU Law Review, whose selection process presents ample opportunities for applicant names to be discovered as it requires personal statements, grades, and résumés. *See* Compl. Ex. 1. Even if the Law Review purports to anonymize documents, it would still be easy for someone to match a résumé with publicly available information about a student. So even if Doe

were to obtain timely relief, he faces an obvious threat that the Law Review and its student leaders who adopted these discriminatory policies will blackball his future application. *Cf. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (noting that courts are "not required to exhibit a naiveté from which ordinary citizens are free"). Maintaining anonymity is the only way to ensure Doe to have an honest opportunity to compete for law-review membership based on his own merit. In other words, absent anonymity, "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Sealed Plaintiff*, 537 F.3d at 190.

Doe also faces a risk of retaliation from law-school professors, staff, and his fellow students. As discussed, Doe faces a "community hostile to the viewpoint reflected in [his] complaint." *Doe*, 653 F.2d at 186; Doe Decl. ¶¶ 5–8 (attached as Exhibit 2). Given the coercive environment of the university and the extreme, often violent protests directed at those with disfavored viewpoints on university campuses,[8] Doe's lawsuit "invite[s] an opprobrium analogous to the infamy associated with criminal behavior." *Id*. "We live in an era in which elected public officials are openly calling for

---

8. *E.g.*, *Protesters Screaming 'Nazi' Shut Down Virginia Anti-Abortion Campus Lecture*, Washington Examiner (Apr. 3, 2023, 5:32 PM), https://shorturl.at/qswXZ (violent protest at an anti-abortion event at Virginia Commonwealth University); *2020 College Free Speech Rankings*, FIRE, https://shorturl.at/cfnI9 (last visited Oct. 23, 2023) ("Administrators and student governments routinely punish dissenting students . . . and visiting campus speakers are shouted down, blocked from entering lecture halls, or disinvited from speaking." (footnotes omitted)); *Riley Gaines Assaulted by Trans Activists at San Francisco State University*, Yahoo News (Apr. 7, 2023), https://shorturl.at/sEJOU (describing how protesters harassed and attacked a speaker on campus); *Charlie Kirk Event at UC Davis Prompts Violent Protest*, Foundation for Individual Rights & Expression (Mar. 20, 2023), https://shorturl.at/ayE49 (campus event "was met with violent protests at University of California, Davis, with some protesters shattering windows and breaking down the doors of the event venue"); *I Was Literally Attacked for Holding A Conservative Political Event On My Campus*, Washington Examiner (Mar. 21, 2021, 6:00 AM), https://shorturl.at/anqz3 (describing how protesters violently disrupted a speaking event and forced the speaker to leave campus under police protection).

harassment of persons with opposing views, and speakers on college campuses"—and law-school campuses—"are being threatened with violence by students and others who do not share their opinions." *Doe #1*, 2018 WL 7079489, at *5. As Professor Volokh has explained, "many students . . . are finding themselves facing ideological discrimination based on their beliefs and statements" in law schools.[9] "[T]hings in law school have been getting worse," as "they encourage people to try to build intellectual and emotional divides" and "encourage or tolerate [students] shouting down those" they disagree with.[10] "[T]he cause of the problem" is "cultural both among students and among the administrators," and "there are lots of levers short of formal punishment that administrators have if they do want to suppress speech."[11] The official "message to students" who ascribe to or even listen politely to dissenting views is that "they themselves are hateful people who may merit being shunned."[12] Many concrete examples show what follows from this pervasive university pressure: individuals being "condemned," "threatened," "doxed," "physically intimidated or assaulted," and investigated for "harassment" or "engaging in hateful behavior."[13] These threats are exacerbated here because "local and national media outlets have reported concerning the relevant events and could publish [the plaintiff's] name[] in an update to their ongoing coverage." *Doe #1*, 2018 WL 7079489, at *5; *see, e.g., Conservative*

---

9. Eugene Volokh, *Yale Law School, Judge Ho, Neutrals, and Secondary Boycotts*, Volokh Conspiracy (Oct. 12, 2022), https://reason.com/volokh/2022/10/12/yale-law-school-judge-ho-neutrals-and-secondary-boycotts.
10. Eugene Volokh, *Discussion, Coercion, and The Pursuit of Truth*, YouTube (Feb. 8, 2023), https://www.youtube.com/watch?v=UPUq6fkhM8s#t=24m7s; https://www.youtube.com/watch?v=UPUq6fkhM8s#t=31m3.
11. Eugene Volokh, *Discussion, Coercion, and The Pursuit of Truth*, YouTube (Feb. 8, 2023), https://www.youtube.com/watch?v=UPUq6fkhM8s#t=83m13s.
12. Eugene Volokh, *Free Speech Rules, Free Speech Culture, and Legal Education*, 51 Hofstra L. Rev. 629, 642 (2023).
13. John Hasnas, *Free Speech on Campus: Countering the Climate of Fear*, 20 Geo. J.L. & Pub. Pol'y 975, 977–78 (2022)

*group sues NYU, claiming law journal student staffing discriminates against straight, white applicants*, NBC News (Oct. 20, 2023), https://tinyurl.com/5b8ydrse.

One specific potential method of retaliation is via NYU's Bias Response Line, which urges students to report their classmates for perceived "bias" incidents.[14] Such reporting can lead to "formal investigation," referral, and "appropriate" "disciplinary action."[15] NYU's "Non-Discrimination and Anti-Harassment Policy" for students contains a sweeping definition of "prohibited harassment," which includes "unwelcome verbal . . . conduct" that might "create[ ] an intimidating, hostile, or offensive academic" environment.[16] Alleged violations of this policy are investigated by the Office of Equal Opportunity, with violators referred to the Dean for "sanctions."[17] Even "incidents" that violate no policy can trigger "refer[ral] [of] the matter to the appropriate BRL partner or Global Inclusion Officer" and unspecified "mechanism[s]" for resolution.[18] At schools with similar regimes, one of the issues involving "the largest numbers of reported complaints" has been "affirmative action." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020). And courts have concluded that students reasonably fear enforcement of these open-ended bias response policies. *See id.* at 337–38 (concluding that a similarly open-ended policy "reasonably implies that the University will" "enforce its . . . policy as far as possible"); *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1122 (11th Cir. 2022) ("Given the . . . policy's astonishing breadth—and slipperiness—we think it clear that a reasonable student could fear that

---

14. *Bias Response Line*, NYU, https://perma.cc/BZ2P-CSZ2 (last visited Oct. 23, 2023).
15. *Id.* at 2–3.
16. Non-Discrimination and Anti-Harassment Policy and Complaint Procedures for Students (Aug. 16, 2021), https://www.nyu.edu/about/policies-guidelines-compliance/policies-and-guidelines/non-discrimination-and-anti-harassment-policy-and-complaint-proc.html.
17. *Bias Response Line*, *supra* note 14, at 3.
18. *Id.*

his speech would get him crossways with the University . . . ."); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019) ("By instituting a mechanism that provides for referrals, the University can subject individuals to consequences.").

All of these threats of retaliation support anonymity here. *See Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) ("Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued."); *Does 1–2*, 2022 WL 836990, at *7 (relying on "chilling effect" and "potentially adverse implications for Plaintiffs' future employment"); *see also EW v. New York Blood Center*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (granting anonymity without a "particularized showing of any specific harm or stigma to [the plaintiff] caused by prosecuting the case under her own name").

3. Next, this suit relates to the Defendant's receipt of government funds for use in higher education, so the university's status as a private party matters little. Generally, "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *EW*, 213 F.R.D. at 111. But "Defendant is not an ordinary private party, with interests relating solely to its personal life and business reputation—rather, [NYU] is organized solely to perform an important, public service," *id*. at 112, namely, "to be a top quality international center of scholarship, teaching and research."[19] "Thus, this case is analogous to one involving a government defendant, where personal anonymity is more readily granted because of the existence of a public interest in the action and a lesser interest in personal reputation." *Id*. Further, as noted, NYU proudly and publicly proclaims its desire to discriminate in favor of women and non-Asian racial minorities, so it can hardly claim that this suit causes it reputational damage.

---

19. NYU, *About NYU*, https://www.nyu.edu/about.html (last visited Oct. 20, 2023).

4. NYU is not prejudiced by allowing the plaintiff to press his claims anonymously, especially at this early stage of litigation. This suit challenges the legality of a discriminatory law-review policy, and the identity of the plaintiff makes no difference to NYU's defense. The plaintiff's factual knowledge or credibility is not at issue. Instead, the issue is whether the law review is discriminating on the basis of race or sex, and NYU has no need to know the plaintiff's identity to address that question or defend itself in this litigation. *See Yacovelli v. Moeser*, No. 02-cv-596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004); *Board of Regents of University of Colorado*, 2022 WL 43897, at *4 ("the identity of each of the Plaintiffs is of little-to-no value to the underlying allegations of the complaint").

That is especially true at this "early stage in litigation." *Doe v. Bronx County District Attorney's Office*, No. 22-cv-5230, 2022 WL 2819448, at *2 (S.D.N.Y. July 18, 2022); *see also Sealed Plaintiff*, 537 F.3d at 190 (noting the importance of the "stage of the litigation"). Should some situation arise later that would require reconsideration of the plaintiff's anonymity, the parties can address the issue at that time, but there is no reason now to force the plaintiff to reveal his identity now. *See Does 1–2*, 2022 WL 836990, at *9; *Doe v. Hobart & William Smith Colleges*, No. 20-cv-06338, 2021 WL 1062707, at *4 (W.D.N.Y. Mar. 19, 2021); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006); *see also Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015), *aff'd*, 672 F. App'x 48 (2d Cir. 2016); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000); *Alma v. Noah's Ark Processors, LLC*, No. 20-cv-3141, 2020 WL 7246602, at *2 (D. Neb. Dec. 9, 2020) (explaining that because "this case is at an extremely early stage," "the court finds little harm in allowing the movants to proceed pseudonymously," and "the court reserves the right to readdress this issue"); *Rural Community Workers Alliance v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228, 1228 (W.D. Mo. 2020) (similar); *Publius*, 321 F.R.D. at 365 (similar).

5. The public has only a weak interest in the plaintiff's identity because of the nature of the claims. The plaintiff's identity matters little to these claims, as they relate entirely to the law review's generally applicable practices. This lawsuit "seeks to raise an abstract question of law" that plausibly "affects many similarly situated individuals." *Del Rio*, 241 F.R.D. at 158. Because "the public will know that a group of people in the [p]laintiffs' position were" allegedly discriminated against "and are seeking to vindicate what they believe to be their constitutional rights," there is a "uniquely weak public interest in knowing the litigants' identities." *Does 1–2*, 2022 WL 836990, at *10 (summarizing and quoting *Board of Regents of University of Colorado*, 2022 WL 43897, at *5); *see Doe v. Cuomo*, No. 10-cv-1534, 2013 WL 1213174, at *7 (N.D.N.Y. Feb. 25, 2013) (similar, and collecting cases); *Free Speech v. Reno*, No. 98-cv-2680, 1999 WL 47310, at *3 (S.D.N.Y. Feb. 1, 1999) ("[B]ecause the particular plaintiffs in this . . . challenge are essentially interchangeable with similarly situated persons, there appears little public interest in which particular persons have actually sued.").

6. Last, the plaintiff's identity has thus far been kept confidential, and there are no alternative mechanisms for protecting his confidentiality. The plaintiff's identity is not known to either NYU or the public, and "[t]here are no other mechanisms currently in place to protect [the plaintiff's] identit[y] if [he] cannot proceed with this litigation anonymously." *Doe #1*, 2018 WL 7079489, at *9.

In sum, "in comparison to the [P]laintiff's interest in h[is] privacy, the First Amendment interest in access to the [P]laintiff's name in the course of these proceedings appears to be primarily theoretical" at this juncture. *EW*, 213 F.R.D. at 112.

## CONCLUSION

The motion to proceed under pseudonym should be granted.

        Respectfully submitted.

        /s/ Ronald A. Berutti

| | |
|---|---|
| JONATHAN F. MITCHELL* | RONALD A. BERUTTI |
| Mitchell Law PLLC | Murray-Nolan Berutti LLC |
| 111 Congress Avenue, Suite 400 | 30 Wall Street, 8th Floor |
| Austin, Texas 78701 | New York, New York 10005-2205 |
| (512) 686-3940 (phone) | (212) 575-8500 |
| (512) 686-3941 (fax) | ron@murray-nolanberutti.com |
| jonathan@mitchell.law | |
| | CHRISTOPHER MILLS* |
| GENE P. HAMILTON* | Spero Law LLC |
| America First Legal Foundation | 557 East Bay Street #22251 |
| 611 Pennsylvania Avenue SE #231 | Charleston, South Carolina 29413 |
| Washington, DC 20003 | (843) 606-0640 (phone) |
| (202) 964-3721 | cmills@spero.law |
| gene.hamilton@aflegal.org | |

\* *pro hac vice* applications forthcoming

Dated: November 14, 2023          *Counsel for Plaintiff*